Good morning, Your Honor. This is Frank LaForge of Hall & Hart on behalf of the appellant, the Penta Building Group, otherwise known as Penta. And I would like to reserve at least three minutes for rebuttal. Great. What's your call? I think the central question in this appeal is whether the union, which currently doesn't represent any Penta employees, can contractually entrench itself as the exclusive collective bargaining representative of any future Penta employees that Penta might hire in the years ahead. Now, before I answer that question, I would take a quick step back and just consider what collective bargaining means. In collective bargaining, an employer and the chosen representative of a group of employees bargain over employment terms, things like wages and pensions and And because of the representative or union has the power to bind those employees, NLRA law is clear that it must be supported by a majority of those employees, and it must have an appropriate bargaining unit. If it doesn't have that, it ceases to be a lawful agent and no collective bargaining can take place. In this case, the union here has not represented a single Penta employee for a number of years because Penta hasn't had any employees or it hasn't had any construction projects in the union's jurisdiction since about 2017. And that's something that the union has never disputed in this case. So when the current CBA's three-year term expires in just a few months, none of its employment terms about pensions and wages will have ever been applied to a single Penta employee, and this begs the question, who is the union really representing here because it isn't any actual Penta employees that are in existence, it is effectively a collective bargaining representative that has no one to represent and nothing over which to bargain. And that brings me to the question I posed at the outset. Does the NLRA permit a union who doesn't represent any employees to contractually designate itself as the collective bargaining representative of future employees? And to that, the answer has to be no, because Penta withdrew recognition in 2018, and it showed in its briefs that it's an unlawful and unfair labor practice for a employer like Penta to collectively bargain with an improper or minority union. You can't bargain with an agent that has no lawful power. Penta also cited to a number of cases from the NLRB and federal courts showing that when an employer withdraws recognition, that immediately terminates any obligation to collective bargain. It also terminates any existing CBAs, particularly under Section 9 of the NLRA. And finally, Penta showed that the only place a union can effectively undo a withdrawal of recognition is before the NLRB, because the NLRB has exclusive jurisdiction over any such representational questions. Now, here, Penta withdrew recognition in 2018, and the union never challenged that before the NLRB. So as of 2018, Penta no longer had any obligations to collectively bargain with the union, nor could it be bound to any subsequent collective bargaining agreements, and it voided the underlying LMA on which the arbitrator's power was founded. Now, of course, the- You said that as of 2018, Penta got a ruling of the NLRB that laborers no longer represented their workers? No, I'm saying under the law, Penta withdrew recognition, and that's all Penta had to do. Penta didn't have to take any further steps. It would be the union's burden to challenge that withdrawal of recognition. It would have to go before the NLRB and say, well, actually, we do have an appropriate bargaining unit. Here are these employees. Of course, it couldn't do that, and it couldn't do anything like a call for a union election when there are- But, Dr. McTryde, didn't Penta agree that it's not due any right of non-recognition that only the labor- The only person who could withdraw recognition from the laborers themselves? I don't think so. I mean, I think- That's what the contract says. It says- Correct me if I'm wrong, but I thought the contract said that only employees could ask for an election to withdraw recognition. Well, two things. First, that presumes there are employees. You can't have an election if there are no employees. And two, it assumes that an employer can be stuck in an unlawful collective bargaining relationship. And so when it comes to a court to enforce that relationship, it's going to have to put the procedural terms of that contract ahead of its own illegality. Because what's happening here is that Penta's being forced to remain in an unlawful collective bargaining relationship. But counsel, couldn't Penta get out of that relationship by properly terminating the LMA pursuant to paragraph 39 of the LMA? Well, no, as construed by the arbitrator and argued by the union, to withdraw recognition, we also have to, in our termination notice, offer to bargain for a new contract and recognize the union. To meet and confer. It doesn't say that you have to end up in agreement with the new CBA. It just requires you to meet and confer within a certain period of time. You have to offer to meet and confer about a new collective bargaining relationship. And I think that is effectively recognizing the union. At that meet and confer, wouldn't that be the appropriate time to say, hey, you have no employees. We're not representing anybody. So, and, you know, verify that instead of Penta unilaterally saying we don't have any employees, we don't intend to have any employees, it would be the union recognizing, well, yeah, you're not employing any of our members. Well, I think what you're saying is can we put the, can we condition Penta's requirements under the LMA and I think the case law, right. But all the case law we cited shows that these representational issues, whether the union represents an appropriate bargaining unit and whether it's a lawful collective bargaining agent in itself, those are the logical antecedents to collective bargaining. And so let's say if it were more explicit in the LMA that we, to withdraw recognition, we had to follow this particular procedure. Let's say Penta didn't follow that procedure. That doesn't change the illegality of the underlying collective bargaining relationship. When it comes to this court, you're going to be asked to essentially affirm the enforcement of an improper and unlawful collective bargaining relationship, and it goes against this court's precedent in cases like Ketchikan Pulp and also the U.S. Supreme Court's decision in International Ladies Garment Workers Union. Both of those cases stand for the proposition that an employer and a union cannot contractually choose a collective bargaining representative for a new or future set of employees. And that's exactly what's happening here. Essentially, if you're going to say that this, that we didn't properly withdraw, well, the effect of it is that this LMA or this collective bargaining relationship and the union's representation is going to be imposed potentially on future Penta employees down the road. And so in that right, it's not really Penta's right to waive or to follow certain procedural requirements, nor is there any law supporting that. I don't see a single case out there that said that a employer couldn't withdraw recognition because it had to follow certain procedural requirements. And in fact, I'll defer this court to the decision in that Kentucky, West Virginia gas case, because the union made the same exact argument. It said that the employer had to, or the arbitrator can arbitrate the issue of the termination notice, even though it had withdrawn recognition. And the court in that case said no, because the representational issues inherent in the withdrawal of representation are naturally antecedent to the enforceability of the contract. To enforce the contract and then determine whether it's void or whether the arbitrator has any power, puts the proverbial cart in front of the horse. Counselor, question, maybe I'm missing something, but what's the specific unfairness to Penta of being bound by the LMA while it doesn't have any, doesn't have a bargaining unit of employees? I mean, what's, I guess, where's the harm? Where's the specific unfairness to Penta being bound by? Well, we're trapped in an illegal and unfair labor practice right now. We are, if the district court's order stands, we are collectively bargained and bound to a collective bargaining agreement with a union that isn't lawful. They don't represent anybody. There's no. I think, well, I understand, but since you don't have any bargaining unit employees, how, how is that, what's the unfairness or where's the issue for Penta in this? And she doesn't really have effect of anything. Well, I guess, first of all, we don't know when we will hire any employees. It could be in a decade or more. And right now, I mean, we think it's clear under the law that our withdrawal recognition was effective 2018. You don't want to be bound by this LMA if you hire some future employees who are part of a bargaining unit. Is that what you're saying? Yeah, they would be a new bargaining unit and they have the right to choose their own collective bargaining representative. It can't be decided by contract. And that is the point of cases like Ketchikan Pulp and International Ladies Garment Workers Union. But if you, if you were to follow the contract and not only terminated with a notice of termination, but made an offer to meet and confer to negotiate, you could have negotiated to a contract whereby the union would, that unless there were union people that want to work there, you didn't have to. You could go to non-union workers. That's what you really have to do. I'm not sure. I don't see how that doesn't violate an LRA because we're collectively bargaining over non-existent employees. Well, you've waived the contract, you've waived your right to call for a representation election, and you've agreed that only the workers there can call for a representation election. That being so, your obligation is to go and terminate and meet and confer. And if you negotiate to an impasse, then the question is, can you go to the union to litigate your rights when you negotiate to an impasse? Well, the waiver of the right to seek an election presupposes that there are employees, just like the LMA presupposes that there's an appropriate bargaining unit and that the union is a lawful collective bargaining representative. And again, there's a number of cases out there showing that the representational questions have to precede the contractual ones. That's the cornerstones of collective bargaining are that you have a lawful agent who can represent the employees and that there's an appropriate union. If you take any of those presumptions away, there's no collective bargaining. And there's certainly no enforcement under the NLRA. I think I will reserve the remainder of my time for rebuttal. Thank you. All right. Thank you, counsel. Mr. Lankton. Yes, your honor. May it please the court on behalf of Labor's Local 169.  In the arguments just made by the appellant, the LMA, the LMA I did not hear one word that the lower court, the district court made the wrong decision. In its reply brief, Penta claims that the union wants the court to affirm an award that violates the NLRA. That is absolutely false. What the union wants is the court to deny the appeal and affirm the district court's order confirming arbitration award. It has to be stated and it's clear in each of the briefs that Penta agreed unequivocally that it was bound to the collective bargaining agreement. But in its arguments to this court and to the district court, it doesn't want to be held to the standard of abiding to the terms of the LMA specifically as Judge Wardlaw noted in section 39. And that is you have to follow the procedures in order to give proper notice and then meet and confer. There is no requirement that they have to agree to a contract. So when we hear that the plaintiff, I'm sorry, the appellant Penta is being required to abide to a, what was the word, illegal or to conform to an illegal ULP. That is simply false. There's three things that are required in order for any contractor, including Penta, to get out of the LMA. They're all set forth clearly in section 39 and give proper notice, give the opportunity and notice that you want to, you are willing to negotiate. And then if you're an individual contractor, which Penta clearly is, that you are giving notice to the union as an independent contractor. And so it's not rocket science. In 2005, the parties entered into a 8F agreement, but in 2009, this is all in the briefs, they voluntarily converted the contract to a 9A. Now under 9A and as stated in the LMA, there's no requirement that there be an ever going or ongoing number of employees. Now, as I stated in our brief, if that were the case, then the contract would have absolutely no meaning. It would be rendered negatory in many, many provisions by simply laying off employees. Now, as Judge Cain asked is, what is the harm by being bound to a CBA that you agreed to? And I respectfully submit there's no harm and it is not impossible. This is not a hostage situation. It is not impossible to get out of the contract if you follow the negotiated and agreed to terms of the collective bargaining agreement. May I ask a question for, please? How, if you were to put on the hat of your lawyers for Penta and you were advising Penta, what steps could Penta take to get out of this agreement? Well, I'll put on that hat, but it's very, very, very simple in my opinion, Your Honor. You look at the requirements that says give timely notice between 60 and 90 days. Agree and put in your letter that you will meet and confer to bargain. And it's as simple as that. It is. Let's say, let's say they did that and you were to bargain and they were to say, we want to terminate this agreement. That's our position. And your position were, we don't want to terminate the agreement. Under what circumstances could Penta ever get out of this agreement? By bargaining to impasse and then refusing to agree. At that point, basically the party is over. So if they, if they put a meet and confer to negotiate and they had indeed met and conferred and you bargained to an impasse, then the employer can say, I terminated this agreement and if the bargaining to an impasse involves an unfair labor practice under section 8A, you could take that decision for the NLRB. Correct, correct, correct. It's spot on because as we all know, the NLRA does not require an agreement. It requires negotiating and bargaining in good faith. Council, I have a question. It's a practical. So they, so if you, they did meet and confer and you entered into negotiations, what's the effect on those negotiations of the fact that they don't have any bargaining unit employees? At some point, there's nobody being represented by the union, right? Correct. So, and at that, at that point, the union couldn't even call for an election of the employees under 9A. There's no employees to vote in the election. Correct. Correct. And this happens, I can't say all the time, but it has happened in my 37 years, it's happened. And so in, if I may continue. In, in its reply brief, here's what Pinto said in its footnote number eight on page 15, according to the union, Pinto conceded that the termination notice was deficient before the district court. Pinto then writes, this is incorrect. Next sentence, Pinto merely indicated that it would not challenge the arbitrator's substantive decision on that issue, open paren, which would have been futile given the deferential standard given to arbitration awards. Close paren, close quote. Pinto acknowledges in the arbitration and before the district court that it did not file a timely notice of termination as clearly stated as the primary requirement. It's made the same exact NLRA arguments, which the court rejected, and I think you know, it's kind of frustrating to hear the same arguments when I believe the issue is whether or not the district court committed reversible error when it denied the petition for, or the, yeah, petition for vacating, motion to vacate and confirmed the motion of the union to confirm the arbitration one. As in section 9A, I'm sorry, in 9 USC section two, it concerns the validity, revocability, and enforcement of agreements to arbitrate. And in the, without reading the entire thing, agreement in writing to submit to arbitration and the existing controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and enforceable. Save upon such grounds as exist at law or in equity for the revocation of any contract. And the Nevada, I mean, the U.S. Supreme court's upheld that provision multiple times. And I hate to be redundant, but they agreed, they were bound by the contract. They agreed to submit to the arbitrator. The arbitrator ruled on the issue of whether the timely notice complied with the LMA. And it did not. And the court and both the arbitrator and the court said the consequences of failure to abide mean that you're still bound. And so in this particular case, there was a successor agreement and they're bound. Now, when that successor agreement approaches the end, as you ask your honor, if I was advising them, I would say, make sure you send a timely notice and negotiate to impasse and then walk away if you don't have any employees. I think I've pretty well summarized our argument and I'm open to any more questions if you have. Our request is that you deny the appeal and reaffirm the district court's ruling that went in the favor of the union and against Penta. All right. Thank you, counsel. I believe you had some time left, Mr. LaForge. Thank you, your honor. I think what's notable is that we never heard the union deny that this is an illegal collective bargaining relationship. It never claims that there's a bargaining unit. It never claims to be a legal representative of any existing units. That in itself violates NLRA law. So to enforce these contractual provisions, this court has to inform or has to affirm the enforcement of an illegal collective bargaining relationship. I'd also note that there is no case law out there that says that a employer's withdrawal of recognition can be conditioned by a CBA's terms. In fact, there's a lot of case law out there that says just the exact opposite, that such representational issues have to become before any interpretation of the contract. They are the fundamental precepts of collective bargaining. You have to decide those representational issues in the first place. Those can't be waived. Last, I understood opposing counsel to say that we can only look to the termination notice issue, that there really isn't a representational issue. And I think what the arbitrator did is say the representational issues simply do not matter because of what the LMA says, and that can't be the case. And it's contrary to, again, all the case law we cited, particularly Ketchikan-Pulp, which I'll quote, and it provides that contract rights cannot exist independent of the union's right to represent the unit. So to wrap up my argument, we've made a number of arguments in our briefs and we stand by them, but I think the court can ask itself this, does the NLRA, and particularly section nine, allow a union that doesn't represent any employees to collectively bargain over the rights of future employees? Because that's what's at stake in this case. And if the answer is no, the court's being asked to enforce an improper and illegal collective bargaining requirement. And so let me ask you something. Sure. You originally said that this relationship between Penta and the laborers was originally a section 8F relationship, correct? I believe the opposing counsel said that, but yes, it's true. All right. Isn't that what you've got here? I don't know. No, if it were an 8F relationship, then Penta is not bound to collectively bargain at the termination of whatever CBA is in place, and that's not there. Let me put my question in a different way. Section 8F agreement is fundamentally saying that the employer recognizes that he's going to need some employees, and if the employees come and do the union when they come to work, right? Correct. All right. Isn't that the situation you have now when the workers come, if Penta decides to go do any work, they can recognize the union if there are any workers in the Reno area, wherever in Nevada they go. So what's wrong with a section 9 contract becoming, in effect, a section 8F contract? Well, because the law is clear under section 8F, that when the employment term ends, the employer is under no obligation to continue and collect additional collective bargaining. It can terminate the relationship here. And I'm not aware of any law that says that, I guess, where a 9A relationship exists, and the employee unit disappears, that it suddenly gets transformed into an 8F, particularly when the employer has withdrew recognition. Okay. All right. Here's something more for the question. Judge Baer? No further. No further? Okay. So the Laborers International Union of North America Local 169 versus the Penta Building Group is submitted. We'll take up Lemon v. Thank you. Thank you.
judges: Wardlaw, Bea, Cain